31 P.(2d) 690

**LONGWELL v. CARON.**

No. 3815.

Supreme Court of New Mexico.

March 13, 1934.

Rehearing Denied April 20, 1934.

Geo. A. Shipley and J. L. Lawson, both of Alamogordo, for appellant.

Edward C. Wade, Jr., of El Paso, Tex., for appellee.

SADLER, Justice.

This is an appeal by each of the parties affected from a decree rendered by the district court of Otero county in an accounting suit prosecuted by T. B. Longwell against C. K. Caron, individually, as trustee, and as executor of the last will and testament of C. M. Pate, deceased. Largely, the record writes a history of the changing affairs of Cloudcroft Lumber & Land Company, a corporation, for the sixteen years of its corporate existence, with Longwell and Pate, during all of such time its officers and principal stockholders, as the chief actors. We shall begin in the beginning.

In the month of May, 1911, T. B. Longwell of Alamogordo, N. M., and C. M. Pate of Louisville, Ky., both lumbermen of experience, following an acquaintanceship formed at a chance meeting between them at Hot Springs, Ark., organized a corporation under the laws of Kentucky known as Cloudcroft Lumber & Land Company, with an authorized capital stock of $10,000 for the purpose of dealing in timber and timber lands in Otero county, N. M. Except for ten shares issued to one Walker, a resident of Kentucky, to qualify him for the directorate, the capital stock of the corporation was owned equally by Longwell and

262

Pate. Longwell became president of the corporation, and Pate its secretary-treasurer, in which offices they continued throughout the corporate life.

During the first two years of its existence the company was operated on a small scale, Longwell during such period being employed by the government in estimating and appraising timber and therefore unable to devote his entire time to the company's affairs. In 1913 he resigned his government position and devoted practically all of his time to the company's affairs, Pate remaining in Kentucky and visiting New Mexico only at rare intervals.

The corporate existence of the company continued until January 1, 1927, when it was dissolved by voluntary consent of all of the stockholders. Up to this time, except for the comparatively short period hereinafter referred to, when it was in the hands of a receiver, it continued to engage in the business for which it was organized. Shortly following its dissolution Pate and one C. K. Caron, his son-in-law, who had been in the employ of the company for a considerable period as bookkeeper and accountant, were named by the stockholders as a liquidating committee to wind up its affairs and distribute its assets under specific authorization and direction as follows:

"First: To make such arrangements as may be proper and as in the judgment of said Liquidating Committee is best, to dispose of all of the assets and property of the corporation and to make all necessary contracts and take all necessary steps in connection therewith.

"Second: To first pay out of the proceeds of the sale of the property all indebtedness of the corporation.

"Third: After all property has been disposed of and all debts have been paid, to divide the remainder of the proceeds among the stockholders of the corporation in proportion to their respective holdings."

From January 18, 1927, forward the liquidating committee was in active charge of the affairs of the company by virtue of said resolution until May 2, 1928, when Pate died. Caron became executor of his will and as the survivor of the two liquidators continued in active charge of winding up the company's affairs with the knowledge, consent, and acquiescence of Longwell to the time of the institution of the suit out of which this appeal grows.

The court made an express finding that there was no evidence of fraud on the part of the liquidating committee in administering the affairs of the corporation either when composed jointly of Pate and Caron or when its personnel was reduced to Caron by the death of Pate.

In December, 1923, through an amended certificate of incorporation filed with the Secretary of State in Kentucky by Pate and Longwell and by reason of an accumulation of assets by the corporation, its authorized capital stock was increased from ten thousand to three hundred and fifty thousand dollars. No immediate apportionment of any part of said stock took place, but thereafter and about October 1, 1925, stock was issued, antedated to

January 2, 1924, in amounts and to holders as follows: 11,024 shares to Longwell; 11,722 shares to Pate; 10 shares to Walker.

Between January 1, and October 1, 1923, Pate made contributions of approximately $52,600 to the capital stock of the corporation. This sum was used in the construction of eleven miles of standard gauge railroad from Cloudcroft to the scene of a timber permit held by the company on the Mescalero Indian Reservation. While an issue was made of whether Longwell agreed to repay to Pate one-half of this contribution to the capital stock, receiving in exchange one-half of the stock subsequently to be issued therefor, the court specifically found that there was no such agreement. Sufficiency of the evidence to sustain that finding is attacked.

The month of October, 1925, found the credit of the corporation somewhat impaired, and on the 13th of said month, upon the application of Pate as the owner of a majority of the capital stock and the claimant of indebtedness for funds advanced to the extent of approximately $50,000, a receiver for the company was appointed who continued in charge of its affairs until August 20, 1926.

During the pendency of the receivership the claim of Pate against the corporation in the sum of $72,230.97 was filed with the receiver. Certainly, for the purposes of distribution from the reduced assets then before the court, and as appellee insists *for all purposes*, the claim was allowed in the sum of $60,037.48, leaving unpaid a balance of $12,192.49 of the claim as filed.

It satisfactorily appears that when the time came for closing the receivership and making distribution, there was an inadequacy of reduced assets in the hands of the receiver to pay all outstanding claims in full and meet the expenses of the receivership; that the corporation then owned a valuable timber contract with the government on 640 acres of land in the Mescalero Indian Reservation, known as the Water Canyon Tract, the sale of which by the receiver was imminent to raise funds with which to satisfy claims; and that to avoid a receiver's sale of the rights on this valuable timber tract, Pate reduced his claim by the amount above indicated, thereby accomplishing a return of the company's assets to the corporation at close of the receivership.

While the trial court refused the specifically requested finding of appellant that appellee, Longwell, agreed to repay to Pate one-half of the amount of any loss by reason of said reduction, in the findings made of its own motion it did find that the item of $12,192.49 so deducted from said claim and, following the return of the corporate assets set up on the books of the corporation as an indebtedness owing by it to Pate, was a just charge against the funds in the hands of Caron as surviving member of the liquidating committee and allowed it together with interest thereon from the close of the receivership at the rate of 6 per cent. per annum.

It also sufficiently appears that one of the purposes in mind in increasing the authorized capital stock of the corporation had been to sell as treasury stock a sufficient amount

thereof to replenish the funds of the corporation and enable it to repay unto Pate all or a substantial part of the large advancements he had made to the corporation as aforesaid. The end sought, however, was not accomplished and stock to the extent only of three blocks of the par value of $5,000 each to one Carr, one Praytor, and one Waggoner, known as the Carr-Praytor-Waggoner stock, was sold.

The closing of the receivership without a sale of all corporate assets could not be accomplished, it was felt, without the consent of these three stockholders. This consent they refused. Accordingly, at or shortly prior to the close of the receivership, their stock was taken over by Pate at its face value of $15,000. Appellant Caron, Pate's executor and surviving member of the liquidating committee, insisted at the trial there was an agreement on Longwell's part that if Pate would bear the initial expense of retiring this stock at its par value, he (Longwell) would repay to him one-half of the amount expended in so doing and that thereby Longwell became indebted to Pate in the sum of $7500. Appellant's specifically requested finding embracing his version of this transaction was refused, and in the findings made of its own motion the court disallowed the item as a charge against Longwell in Pate's favor.

On or about December 24, 1922, a settlement had been had between Longwell and Pate covering their obligations to each other and to the corporation, as a result of which a balance was struck showing Longwell indebted to Pate in the sum of $9,340.92. This indebtedness Longwell evidenced by a note to Pate in said sum and an assignment of his stock certificate for 332 shares as security for the repayment thereof. The assignment recited that the indebtedness was to run "without interest" and that any certificate issued in lieu of the one assigned should be subject thereto and that it should apply "not only to the debt hereinbefore cited and set forth, but to any other sums of money due and owing by me to the said Pate." Although an issue is made in the case as to whether the assignment stood as security for other amounts claimed to be owing by Longwell to Pate, particularly the former's share (one-half) of Pate's advancement in the sum of $52,600.00 above mentioned, the court found that the assignment was made "as security for said $9,340.92 and not otherwise."

Longwell claimed that the matter of Pate's advancement of said sum of $52,600 as well as a claimed error in the settlement of December, 1922, were compromised and satisfied some time during the month of September, 1925, as the result of negotiations between him and Pate transpiring between May 1, 1925, and October 1, 1925, and that the reissue of stock to them postdated said settlement. The court found with him on this issue, although appellant contends that in effect this finding amounts to the establishment of a claim against the deceased, Pate, based upon the uncorroborated testimony of Longwell as to matters transpiring before Pate's death.

Within a few months following the return of the corporate assets to the stockholders and about October 19, 1926, it contracted the sale to Southwestern Lumber Company of the timber on the 640 acres heretofore mentioned, the Water Canyon Tract, the timber to be de-

livered in the form of sawlogs to convenient loading places on a railroad in that vicinity owned and operated by the purchaser. In order to fulfill this contract it became necessary for the corporation to extend its standard gauge railroad some miles to connect the Water Canyon Tract with the purchaser's railroad. This extension was begun immediately after the dissolution of the receivership and constructed with money advanced by Pate. The total amount so advanced was $19,480.41, against which there was a credit for moneys received by Pate during this period in the sum of $999.71, leaving a net balance to his credit on January 1, 1927, for money advanced after the receivership was closed in the sum of $18,488.70.

The liquidating committee as shown by its books had paid this amount to Pate's executor together with interest at the rate of 6 per cent. per annum. Owing to the accounting method employed, it seems to be conceded that interest was compounded. The court allowed the principal amount of this item but surcharged the account of the committee with the interest payments. The appellant complains of the denial of interest and this claim of' error is one of the main points argued in the case. He seems to concede there is no justification for the compounding of interest, though admitting that the method of bookkeeping employed accomplishes that result.

The accounting submitted by the liquidating committee discloses that from November, 1926, to March, 1927, both months inclusive, Caron drew a salary of $166.66 per month.

From April, 1927, to September, 1928, both inclusive, he drew $200 per month, and beginning in October, 1928, and until the close of the accounting he drew salary at the rate of $250 per month. These salary payments were found to be reasonable and just and were allowed by the court.

This review represents both an appeal and a cross-appeal. The facts, necessarily detailed and somewhat involved in transactions so numerous and extending over so long a period, have been stated at sufficient length hereinabove to give a general outline of the situation existing between the parties. So far as we have related them they are based on the court's findings or are undisputed. They will be added to as required in the discussion of the various points involved on the review.

The trial court, as heretofore noted, disallowed the $15,000 item in the Carr-Praytor-Waggoner stock transaction; also disallowed the $26,300 item claimed by appellant on account of Pate's $52,600 advancement to the capital stock of the corporation; and disallowed appellant's claim for interest on the advancements made subsequent to receivership. The appellant on his appeal complains of these rulings.

As also is to be observed, the trial court allowed without interest the item of $9,340.92 secured by Longwell's assignment of stock to Pate; allowed the item of $12,192.49, the balance of Pate's claim in the receivership carried over as a corporate indebtedness upon the close of the receivership; and allowed as reasonable and just the increased salary payments made to Caron and carried into the

accounting by the liquidating committee. The appellee complains on cross-appeal of these various rulings of the trial court.

The main appeal is from a judgment for $2,333.49 rendered in favor of the appellee, T. B. Longwell, against appellant, C. K. Caron, as liquidating trustee of the Cloudcroft Lumber & Land Company, resulting from the accounting. For convenience in disposition we shall first decide the points raised by the cross-appeal.

■ The first claim of error relied upon for reversal on cross-appeal relates to the court's action in allowing Caron, as liquidating trustee, credit for the item of $12,192.49, the amount carried over from the receivership as an obligation of the corporation to Pate. This is the amount, as will be remembered, by which Pate reduced his claim against the corporation before the receiver to enable the latter to settle in full claims against and expenses of the receiver as a result of which the Water Canyon Tract was turned back to the corporation for liquidation by it.

In passing upon this point it is necessary to reconcile the court's affirmative and refused findings and conclusions in order to determine its theory of liability. As pointed out hereinabove, it refused to find at Caron's request that Longwell had agreed to repay Pate one-half the amount of any loss by reason of such reduction. It found that Pate's claim was allowed by the court in the receivership for $60,037.48 and disallowed for the sum of $12,192.49; that the decree in the receivership recited among other things in substance that the receiver having paid to Pate in open court the sum of $60,037.48 in full settlement of his claim, the receiver was directed to turn back to the corporation the remaining assets in his hands. It refused a conclusion of law requested by Longwell, cross-appellant, that the item in question deducted from the claim of Pate, as aforesaid, was barred under the doctrine of res adjudicata and could not be charged against the assets in the hands of Caron, as liquidating trustee.

Notwithstanding the foregoing findings and conclusions given and refused as indicated, the trial court, and apparently of its own motion, made the following finding, to wit: "The court further finds that the amount of $12,-192.49, which was deducted from the claim of C. M. Pate, which he filed with the receiver, is a just charge against the funds in the hands of Mr. Caron, the surviving member of the liquidating committee; that interest should be allowed on that amount from the 19th day of August, A. D. 1926, up to and including the 27th day of August, 1931, in the amount of six per cent per annum; that interest as computed by the court should be in the amount of $3,173.49, making a total claim against the funds in the hands of Mr. Caron belonging to the corporation of $15,365.98."

In the receivership proceedings it appears that the referee had disallowed the Pate claim, exceptions to which action came before the district court. In the order of the district court upon the referee's report of claims the following appears, to wit: "Upon presentation of his claim for the sum of $72,230.92, C. M. Pate stated in open court that he de-

sired that the same be reduced by the court to such amount as would leave in the hands of the receiver sufficient funds to pay all fees and expenses and costs of the receivership."

The order recites that all other claims against the corporation were to be paid in full and that upon Pate's offer his claim was to be scaled to such amount as would leave in the receiver's hands a sufficient sum to discharge in full the costs and expenses of the receivership, and his claim, after ascertaining amount of the deduction, was to stand approved for the full amount remaining.

The final judgment discharging the receiver, while allowing the claim for $60,037.48, the portion thereof remaining after suffering the agreed deduction, which amount the receiver was directed to pay to him "in full of all indebtedness of the defendant company to him," contains the following, to wit: "And it further appearing from such report that the total amount of all indebtedness of the defendant, both preferred and general allowed and approved by the court, including the claim of the said C. M. Pate for $72,230.97, is insufficient after making such deductions or allowances to the receiver, the referee and their attorney to the extent of $12,192.49; and the said C. M. Pate having offered in open court to deduct from his claim of $72,230.97 an amount equal to said difference in order that in addition to the payment of such costs and allowances above made, will be sufficient to pay all other creditors of the company according to the amounts claimed by them and approved by the court in full; it is ordered by the court that the claim of C. M. Pate, in order that such payments may be made in full, shall be reduced in the said sum of $12,-192.49 * * *."

We should adopt any reasonable view of the effect of the decree in the receivership proceedings placed upon it by the trial court. In declining to hold that said decree was res adjudicata of corporate liability for the item in question, the trial court necessarily considered the circumstances of its rendition as disclosed by the files in the receivership. It is obvious that its allowance for less than its full amount and in the sum to which reduced was for a purpose. That purpose appears upon the face of such files, namely, to permit the return to the corporation for self-liquidation or resumption of business the remaining assets. It is undisputed that the chief and practically sole asset was the valuable Water Canyon Tract of timber.

It also fairly appears when the matter was before the court for allowance of claims upon the referee's report that, subject to disallowance of the claim to the extent of a then unascertained amount made necessary if other claims and expenses of administration were to be paid in full (without which a receiver's sale of remaining assets was not to be avoided), the claim had the approval of the court for its full amount. This amount becoming ascertained before final decree in the receivership, for purposes of payment by the receiver, it was allowed in the reduced sum and disallowed to the extent of the receiver's inability to pay it.

We are unable to put the trial court in error in its disposition of this item. Its refusal to find an express promise on Longwell's part to repay Pate one-half the amount of any loss

suffered by reason of such reduction does not negative a finding that Longwell consented to the item being carried over as a corporate obligation following termination of the receivership, if indeed his consent at such time was essential to allowance of the item. His subsequent attitude is reflected by the fact that immediately after close of the receivership and while he was still president and actively connected with the management of the corporation, the item was set up on the books of the corporation as a credit to Pate and an obligation of the corporation. It so remained, without protest or objection from him until dissolution and thereafter throughout the liquidation.

Longwell and Pate were now the sole stockholders. The latter's act in thus voluntarily reducing his claim before the receiver had protected the remaining assets from forced sale. The moral obligation of the corporation to satisfy the reduction was strong. The trial court saw in the circumstances related a legal liability to repay it. In so doing it must have viewed the facts shown, acquiesced in by the two sole stockholders of the corporation, if indeed not affirmatively agreed to by both of them, as sufficiently evidencing a corporate promise to pay. Such a view is consistent with the court's given and refused findings and conclusions. We think it was not error to so conclude.

■ The trial court's action in allowing Caron, as liquidating trustee, credit for the $9,340.92 item, is attacked upon two grounds: First, that it was barred by limitations; and, second, that the claim of lien had been waived. This is the amount of Longwell's agreed indebtedness to Pate at the time they balanced accounts in December, 1922. It was secured by an assignment of Longwell's stock held by Pate at the time of his death. Longwell admitted the indebtedness, the assignment, and that it was never paid, but seeks, on the two grounds mentioned, to surcharge the account of Caron as liquidating trustee, for the amount turned to the satisfaction thereof.

Actually cross-appellant's two contentions reduce themselves to the one of waiver; for his counsel concedes the soundness of the doctrine that a creditor may realize upon collateral pledged to secure a debt, even though the debt be barred by limitations. 21 R. C. L. 659; 37 C. J. 701. The argument simply is that the rule is inapplicable because of a claimed loss of the lien through waiver. Chief reliance is placed upon the fact that Caron as executor did not inventory the $9,340.92 item as a debt due Pate and that he at one time asserted ownership by his testator of all the stock of the corporation, thus accomplishing a conversion.

■■ Waiver is a mixed question of law and fact. Here the facts were all before the court. It found against cross-appellant upon the issue and its finding has adequate support in the evidence. Furthermore, it has been held that a conversion is not effected by the mere assertion by pledgee of ownership of the pledged property. 49 C. J. 950, § 104, under topic "Pledges."

■ We reach the same conclusion with reference to salary increases paid to Caron. At the time of the dissolution and for approximately three months thereafter he was being

paid at the rate of $166.66 per month. In April, 1927, he began to draw $200 per month, and from October, 1928, following the death of Pate, $250 per month. Cross-appellant complains only of the increases. He was not consulted regarding the same. It appears, however, that preceding each increase in salary added duties, substantial both in importance and number were imposed on Caron. Upon conflicting evidence as to the character and ·value of services rendered, the court found the salaries paid were correct and proper and credited the liquidating trustee with the amounts so expended. That finding is binding upon this court.

This disposes of the points relied upon for reversal on the cross-appeal. We turn next to the main appeal. The appellant, Caron, as executor of Pate's last will and testament, though claiming a large unpaid indebtedness against appellee, Longwell, does not seek personal judgment thereon in excess of security held by him. He asserts before us without contradiction that the allowance of any one of the items claimed against appellee and disallowed by the trial court operates to bar the latter of any recovery whatever. Hence, if sustaining appellant on a particular point relied upon for reversal results in restoring in his favor a disallowed item, the remaining points need not be considered.

We are brought immediately to a consideration of the first and second points relied upon, namely, that the court erred in disallowing interest paid out by Caron; as liquidating trustee, on moneys loaned by Pate to the corporation and to the liquidating committee for carrying on and winding up the corporate affairs.

The claim for interest disallowed by the trial court relates to moneys advanced by Pate to the corporation and to the liquidating committee subsequent to the receivership. · As will be recalled, the corporation resumed exercise of its corporate franchises when its remaining assets were handed back to it by the receiver in August, 1926, and continued in the exercise thereof until voluntary dissolution in January, 1927. Under resolution of the stockholders hereinabove set out, the matter of liquidation was entrusted to Pate and Caron as a liquidating committee.

In order to fulfill its contract for delivery of logs from the Water Canyon Tract, sole valuable remaining asset, the corporation was compelled to extend its railroad for a few miles to contact the line of the purchaser. The corporation being without funds, Pate, an officer and one of the principal stockholders, made advancements before dissolution to the corporation and during liquidation to himself and Caron, as the liquidating committee, for such purpose. The trial court found that the amount of such advancements prior to dissolution was $19,480.41. The railroad was not complete at the time of dissolution and Pate continued to ·make advancements until the time of his death.

Acting under authority of the resolution aforesaid and as surviving member of the liquidating committee, Caron allowed and paid interest upon the advancements or loans. The trial court upon objection of Longwell surcharged Caron's accounts with the inter-

est payments so made. Caron complains of this action and inquires: "In the absence of an agreement that no interest will be charged, is the allowance of interest for the use of money loaned or advanced, a matter within the discretion of the court?"

While counsel for appellant invokes in protection of his interest payments the powers conferred on the liquidating committee by the stockholders' resolution and the good-faith exercise thereof as expressly found by the court, we find it unnecessary to decide the matter upon this contention. We are constrained to hold that under the facts here shown Pate's estate was entitled to interest as a matter of right and as an incident to recovery of the principal upon the advancements made by him during his lifetime. We think it was error for the trial court to deny interest.

The money advanced in substantial amounts was indispensable, before dissolution for carrying on the corporate functions and after dissolution to proceeding with the liquidation. While it is true no express agreement to pay interest is shown, it is equally true that there is no evidence of any agreement not to charge interest. The right to it, however, arises as an incident to the debt itself.

We have held that a person is entitled to interest on any amount due from another from and after the time said amount is found to be payable. Eagle Mining Co. v. Hamilton, 14 N. M. 271, 91 P. 718. The general rule upon the subject of interest is stated in 33 C. J. 201, as follows: "While there are some cases in which interest on advances has been refused, because of some peculiar circumstances in the particular cases, the general rule is that one who lends money to, or makes advances for, the benefit of another, is entitled to interest upon the amount so lent or advanced, although nothing is said about interest at the time of the transaction."

We see no special circumstances in the record before us warranting the denial of interest upon these advances. Interest charges for advancements to the corporation by Pate were included in his claim filed with the receiver. The present interest charges relate to advancements subsequent to receivership. This is merely indicative of an intention on his part, expressed before the present advancements were made, not to waive interest thereon.

It appears, however, and seems to be conceded by appellant, that under the method employed for computing interest, it results that some compound interest is included. As expressed by appellee, the method employed was as follows: "He computed the amount expended, at the end of each year, deducted the amounts withdrawn from the funds during that year, ascertained the difference and computed interest at 6 per cent. on the average balances down to the end of the year. This difference *with interest* he carried forward to the next year, repeated the process for that year, and so on."

This method seems to be somewhat similar to that discussed in Tudor v. John Tudor's Estate, 93 Vt. 353, 107 A. 132, 5 A. L. R. 549.

While in Ellis v. Sullivan, 241 Mass. 60, 134 N. E. 695, it is held that in equity interest may be compounded and in the discretion

of the court allowed where necessary for the purpose of affording a just and equitable accounting, particularly where the person charged with its payment is seeking the aid of the court, the appellant here makes no serious contention that the inclusion of compound interest is warranted. He states that the amount of simple interest is merely a matter of calculation and may be ascertained. The matter of its inclusion in the instant case may be more or less academic, but it is mentioned in passing upon the respective contentions.

It follows from what has been said that the decree appealed from must be reversed, and the cause remanded for further proceedings consistent with the views herein expressed.

It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.